# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7378 | **DATE** | 2/1/2001 |
| **CASE TITLE** | PLATINUM TECHNOLOGY INC vs. FEDERAL INSURANCE CO | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Pursuant to Memorandum Opinion and Order entered this day, plaintiff's motion for partial summary judgment is granted in part and denied in part. Defendant's motion to strike is denied. Defendant's motion for summary judgment is granted in part and denied in part. All previously set dates shall stand.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | Document Number |
| | Notified counsel by telephone. | | FEB 0 2 2001 | |
| | Docketing to mail notices. | | date docketed | 100 |
| | Mail AO 450 form. | | CM | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | |
| | | | 2/1/2001 | |
| JS | courtroom deputy's initials | | date mailed notice | |
| | | | JS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



DOCKETED

FEB 0 2 2001

|  |  |  |
|---|---|---|
| PLATINUM *technology, inc.*,<br>a Delaware corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| FEDERAL INSURANCE COMPANY,<br>an Indiana corporation, | ) | No. 99 C 7378 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Platinum *technology, inc.*, ("PTI") filed a four count complaint against defendant Federal Insurance Company, ("Federal"). Count I seeks a declaration that Federal breached its duty to defend and its duty to indemnify PTI. Count II seeks money damages for Federal's alleged breach of its contractual duty to defend. Count III seeks money damages for Federal's alleged breach of its contractual duty to indemnify. Count IV alleges that Federal's breach of its contractual duties were vexatious and unreasonable and seeks money damages pursuant to Section 155 of the Illinois Insurance Code. On June 27, 2000, this court granted judgment on the pleadings in favor of PTI and held that Federal breached its duty to defend PTI in PTI's lawsuit with Platinum Software Corporation ("PSC"). This court also held that Federal is estopped from relying on "policy



defenses" to avoid insurance coverage to PTI. On December 6, 2000, both PTI and Federal filed a motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On December 29, 2000, Federal filed a motion to strike PTI's Local Rule 56.1(b)(3) response to Federal's proposed statement of uncontested facts. Having reviewed all the materials received into the record, Federal's motion to strike is DENIED. PTI's motion for partial summary judgment is DENIED in part and GRANTED in part, and Federal's motion for summary judgment is DENIED in part and GRANTED in part.

## BACKGROUND

Federal issued a primary general commercial liability insurance policy ("primary policy") and a commercial umbrella policy ("umbrella policy"), insuring PTI. Those policies define the circumstances under which Federal was to defend and indemnify PTI against covered claims. The umbrella policy covers advertising injuries stemming from PTI's advertising activities during the policy period from February 1, 1995 through February 1, 1996.

On July 3, 1997, PSC filed a complaint in United States District Court for the Central District of California against PTI. PSC alleged that it registered "Platinum" as its trademark on August 9, 1988 and that PTI infringed on that mark. As a matter of background for this complaint, PSC stated that in 1989 PSC learned that PTI was marketing computer software under the mark "Platinum" and that PTI was attempting to register that mark in other countries around the world. PSC alleged that in 1989 it demanded that PTI cease all further use of the mark "Platinum" as it was likely to cause confusion in the marketplace. After PSC's demand, the parties engaged in extensive negotiations which ultimately lead to a written agreement entered into on August 10, 1993. The agreement prohibited PTI from using, among other things, the mark "Platinum." In the lawsuit

2

between PSC and PTI, Count I of the first amended complaint alleged that PTI breached its contract with PSC by repeatedly violating the written terms of the 1993 agreement. Count II alleges trademark infringement.

After being served with the complaint and the first amended complaint, PTI tendered both complaints to Federal and requested defense and indemnification. By a letter dated June 24, 1998, Federal unqualifiedly refused and declined to defend and refused to indemnify PTI in the lawsuit. In January, 1999, PTI and PSC settled the lawsuit. As part of the settlement agreement, PTI was required to pay PSC four million dollars and required to provide to PSC a six million dollar credit toward the purchase of products and services from PTI. This 1999 settlement agreement contained mutual general releases from future liability, provisions for dismissing the underlying complaint with prejudice, and provisions requiring PSC to transfer to PTI the trademark rights in "Platinum."

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine

issue of material fact that requires trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

This court held on June 27, 2000, that the umbrella policy issued by Federal to PTI covered damages stemming from PTI's infringement of PSC's trademark. Now on a motion for partial summary judgment, PTI moves this court to find as a matter of law that the 1999 settlement agreement between PTI and PSC is reasonable. PTI argues that since Federal breached its duty to defend and indemnify then Federal must now indemnify PTI for all its reasonable settlement amounts. Accordingly, PTI moves this court to enter final judgment in their favor and award them the amount of $9,268,445 in indemnification, the present value of PTI's liability under the 1999 settlement agreement plus attorney's fees and interest. Upon further review of the record, PTI's motion for partial summary judgment is denied in part because there exists a genuine issue as to whether the 1999 settlement agreement is reasonable and whether the attorney's fees were an expense of litigation or an expense of an otherwise uninsurable business transaction. PTI does, however, establish, based on the undisputed material facts in the record, that there is no factual issue as to whether it had a reaonable anticipation of liability in the underlying suit against PSC. Accordingly, partial summary judgment in favor PTI on this issue is appropriate as a matter of law.

On Federal's separate motion for summary judgment, Federal moves this court to find that the 1999 settlement agreement was not reasonable as a matter of law. Federal argues that PTI suffered no loss and incurred no legal liability to PSC. Federal asserts that the 1999 settlement

4

agreement is actually a purchase of a trademark and not a payment for damages resulting from PTI's trademark infringement. In the alternative, Federal argues that the six million dollar product and services discount offered by PTI to PSC amounts to speculation and conjecture which is not insured by Federal. Federal's motion for summary judgment is denied as to these issues because Federal fails to submit sufficient evidence to substantiate its arguments. Federal's arguments and evidence do create an geniue issue of fact, however, again concerning the reasonableness of PTI's 1999 settlement agreement. Finally, Federal moves this court grant summary judgment in their favor as to whether Federal acted vexatiously or unreasonably under §155 of the Illinois Insurance Code. As to this issue, summary judgment in favor of Federal is appropriate as a matter of law.

I.    FEDERAL'S MOTION TO STRIKE

Federal argues the PTI violated Local Rule 56.1(b)(3) in PTI's response to Federal proposed statement of uncontested facts. Federal argues that PTI improperly failed to concisely respond to Federal's statement of uncontested facts. Federal points out that instead of a concise response, PTI raised substantive arguments with citations and improperly attempted to assert additional facts.

A district court has discretion in determining whether to strictly apply or overlook transgressions of local rules. Midwest Imports Ltd. v. Coval, 71 F.3d 1311, 1316-17 (7th Cir. 1995). In reviewing all of the motions, responses, and replies on record, there are numerous occasions where both sides, in their respective Local Rule 56.1(a) and (b) statements, cross the line of stating facts and instead present arguments. The purpose of Local Rule 56.1 statements is to detail the facts in the record not to argue the law. Accordingly, this court will not strike any part of PTI's response to Federal's proposed statement of uncontested facts, but instead this court will disregard all the legal arguments raised in PTI's and Federal's Local Rule 56.1(a) or (b) statements.

5

II.    PTI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In considering PTI's motion for partial summary judgment, this court will make all reasonable inferences in favor of Federal. PTI argues that the only issue to be resolved on this motion is whether the 1999 settlement agreement between PTI and PSC is reasonable. PTI argues that since this court previously held that Federal breached its duty to defend PTI and since Federal is estopped from denying coverage under Illinois law, then upon a finding that the 1999 settlement agreement is reasonable, judgment in favor of PTI is necessary as a matter of law. This court agrees with PTI that the only issue to be resolved on PTI's motion for partial summary judgment is whether the 1999 settlement agreement is reasonable. However, PTI misconstrues this court's ruling of June 27, 2000. On June 27, 2000, this court held that Federal breached its duty to defend PTI. In so holding, this court found that Federal is estopped from relying on "policy defenses" to avoid coverage in the lawsuit between PTI and PSC. This court did not hold that Federal was completely estopped from denying coverage on other grounds, outside of policy defenses, as is inferred by PTI's argument. Simply because Federal breached its duty to defend, it does not give PTI a blank check in which to settle the case. See Westamerica Mtg. Co. v. Tri-County Reports, Inc., 670 F.Supp. 819, 821 (N.D.Ill. 1987). PTI only has a right to claim indemnification of costs stemming from a reasonable settlement of the underlying suit. Id.

A.    PTI must establish an anticipation of liablity and the reasonableness of its settlement

In cases where there has been a breach by the insurer of their duty to defend and the insured has reached a settlement agreement, there is a concern that the settlement was entered into in order to obtain insurance coverage for an otherwise uninsurable claim. U.S. Gypsum Co. v. Admiral Ins. Co., 268 Ill. App. 3d 598, 637, 643 N.E.2d 1226, 1243 (1st Dist. 1994). There is also a concern that

6

an insured will be otherwised deterred from entering into a settlement agreement if it had to offer full proof of damages in order to be reimbursed, especially when full proof of damages has yet to be established at trial. Id. As a result, the general rule is that if an insured settles an underlying claim prior to a verdict, then the insured must show that the settlement was for an otherwise covered loss in "reasonable anticipation of liability". Id. (citations omitted). The insured need not establish actual liability, the insured need only show potential liability on the facts known to the insured at the time of settlement, and show that the final amount agreed upon is reasonable in view of possible damages and in view of the probability of the claimant's success against the insured. Id. (citations omitted). Accordingly, PTI must show that the 1999 settlement agreement with PSC was made in reasonable anticipation of liability and must show that amount of the settlement was reasonable in light of damages and probability of success. See Westamerica, 670 F.Supp. at 821.

B.     Anticipation of Liability

The determination of whether PTI's anticipation of liability is reasonable naturally turns on the quality and quantity of proof PTI faced in the underlying action against PSC. Gypsum, 643 N.E.2d at 1244. The nature of the pleadings, the pretrial discovery, the evidence and the testimony presented during the stages of litiation before trial and prior to settlement are all relevant to establish the reasonableness of PTI's anticipation of liability. Id. There need not be proof of whether it was more likely than not that PTI was liable to PSC.     Westamerica Mtg. Co., 670 F.Supp. at 821 (citations omitted). In this case, PTI establishes that it faced a reasonable anticipation of liability and partial summary judgment in their favor on this issue is granted.

The record is replete with evidence that establishes that PTI faced a reasonable anticipation of liability. PTI presents emails from outside counsel to PTI before the lawsuit was filed by PSC

advising PTI that they had potentially violated the terms of the 1993 settlement agreement between PTI and PSC. These emails articulate the nature of the 1993 settlement agreement between PTI and PSC, establish what PTI could and could not do in light of that agreement and speculate that PTI was going to face liability based on their present advertising scheme and the new markets PTI planned to enter. This evidence substantiates the arugments made by PTI that it anticpated the possibility of liability to PSC. Federal does not dispute that PTI faced a reasonable anticipation of liability. As a result, this court grants partial summary judgment in favor of PTI on this issue.

    C.    <u>Reasonableness of the Settlement Amount</u>

The second issue this court must consider, in PTI's motion for partial summary judgment, is whether the settlement amount between PTI and PSC was reasonable. The reasonableness of the amounts paid in settlement is a matter bearing solely upon the issue of damages. <u>Westamerica Mtg. Co.</u>, 670 F.Supp. at 822 (citations omitted). PTI argues that the ten million dollars that PTI agreed to pay PSC as part of the 1999 settlement agreement is reasonable because PTI faced possible damages in excess of $100,000,000. In PTI's memorandum in support of its motion for partial summary judgment, PTI cites to the deposition of an individual named "Daniel Scott Schecter," to support its argument that it faced in excess of $100,000,000 in damages. It is not clear from the portions of the deposition submitted by PTI who Daniel Scott Schecter is but it is inferred from the record established by PTI that Mr. Schecter is outside counsel retained by PTI. Mr. Schecter stated, in his deposition, that PTI's potential liability to PSC could have resulted in damages in excess of $100,000,000 because the infringement PSC sought to establish implicated the entirety of PTI's $1 billion dollar business. Schecter offers his opinion in this regard but does not establish what facts caused him to believe that $100,000,000 was PTI's liablity exposure as opposed to $1 billion dollars

8

or any other dollar amount between $0 and $1 billion in potential liability. Both PTI and Schecter simply state that liability could have been in excess of $100,000,000, but there are no facts in the record to substaniate this conclusion. No where in PTI's Local Rule 56.1(a) statement of uncontested facts does PTI put forth any facts to establish that it faced over $100,000,000 in possible damages. PTI bears the burden of proof on the issue of how much damages it faced as a result of the lawsuit filed by PSC. Therefore, PTI must affirmatively demonstrate its proof in the record. As discussed fully in section III.A below, affidavits including opinions offered in support of a motion for summary judgment must affirmatively demonstrate the assertion it purports to stand for. Schecter's opinion as to what the potential damages might have been if PTI had lost the case fails to affirmatively demonstrate how he reached the dollar amount quoted. Mr. Schecter's opinion lacks a proper factual basis and it lacks a discussion of reasoning.

In scouring the record in search of some facts which could possibly establish the potential of damages PTI faced, this court found in PTI's Local Rule 56.1(a) statement, that PSC's opening demand in mediation with PTI was $21 million to settle the case. In addition, this court found in PTI's Local Rule 56.1(a) statement that PTI initial offer was $2.5 million to settle the case. Neither of these facts alone are sufficient to carry PTI's burden of proof as to how much liablity it faced. Both PSC's initial demand and PTI initial offer to settle are far below the $100,000,000 dollars in liability that PTI argues it faced. Both PSC's demand and PTI's offer, however, establish a framework upon which the reasonableness of PTI's ultimate $10 million settlement can be evaluated.

Federal, however, disputes these mediation numbers in its Local Rule 56.1(b) statement. In addition, Federal argues in its memorandum in opposition to this motion for partial summary judgment that PTI's citations in support of its claim of potential damages are not accurate. Federal

substantiates its position through alternative citations to the factual record which contradict PTI's argument attempting to establish potential liability. Taking in the light most favorable to Federal, PTI fails to establish that there is no genuine issue of material fact on this point. It is clear from the record that there is an issue of material fact as to what amount of damages PTI faced as a result of its lawsuit with PSC and as to whether PTI's settlement amount is reasonable in light of those potential damages. Accordingly, PTI's motion for partial summary judgment must be denied.

III.     FEDERAL'S MOTION FOR SUMMARY JUDGMENT

In considering Federal's motion for summary judgment, this court will take all reasonable inferences in favor of PTI. Federal presents three issue upon which it moves this court to grant summary judgment. First, Federal argues that summary judgment in its favor is necessary as a matter of law because PTI suffered no damages from its lawsuit with PSC. Summary judgment in favor of Federal on this issue is denied because Federal fails to present sufficient evidence in the record to establish that PTI's settlement with PSC is unreasoanble in light of potential damages or to establish that PTI's settlement with PSC is an otherwise uninsurable claims.

Second, Federal argues that summary judgment in its favor is necessary as to the $6 million credit to PSC because that amount of damages is not settled between the parties and actually amounts to nothing more than speculation and conjection. Summary judgment in favor of Federal is denied as to this issue becasue Federal fails to present sufficient evidence in the record to establish that the $6 million credit to PSC is not a legal liablity to PTI.

Finally, Federal argues that summary judgment in its favor is necessary as a matter of law on whether it acted vexatiously and unreasonably in denying converage to PTI under §155 of the Illinois Insurance Code. As to this issue, Federal demonstrates that there is no issue of material fact

10

regarding its behavior in conducting this litigation. This court finds that PTI failed to present sufficient evidence in the record to establish that Federal did anything more than have a honest dispute concerning its legal liablity to PTI under the insurance policies at issue. As a result, summary judgment in favor of Federal is necesary as a matter of law.

A.    There is a question of whether PTI settled with PSC to uninsurable claims

In arguing its motion, Federal acknowledges this court's holding of June 27, 2000 that it breached its duty to defend PTI. Federal nonetheless argues that the subsequent settlement agreement between PSC and PTI did not result in PTI paying damages to PSC. Federal argues that PTI's 1999 settlement agreement with PSC is a purchased of the disputed trademark by PTI with a condition subsequent to dismiss the pending lawsuit and therefore uninsurable by Federal. See Gypsum, 643 N.E.2d at 1244, see also Illinois Tool Works, Inc. v. The Home Indemnity Co., 24 F. Supp.2d 851, 854 (N.D.Ill 1998). Federal argues that PTI did not pay reparation for an injury, but instead purchased an asset in the 1999 settlement agreement with PSC. Federal argues that the entire 1999 settlement agreement between PTI and PSC represents the purchase price of the "Platinum" trademark from PSC by PTI and therefore Federal is not responsible for any of PTI's settlement costs. In support of its argument Federal cites to Zurich Insurance Company v. Killer Music, Inc., 998 F.2d 674 (9th Cir. 1993) for the proposition that Federal is not responsible the uninsurable purchase price of rights transferred in a settlement agreement. As a matter of procedure, decisions of the United States Court of Appeals for the Ninth Circuit are not necessarily authoritative for a district court in the Seventh Circuit. However, where the Seventh Circuit is silent on an issue, opinions from other circuits may be persuasive.

In Zurich Insurance, the Ninth Circuit determined that Zurich insurance had a duty to defend

11

Killer Music and that Zurich Insurance breached that duty. 998 F.2d at 678, 679. As to the settlement agreement amount of which Killer Music demanded be reimbursed by Zurich, the Ninth Circuit stated that the mere fact that Zurich failed to defend does not mean that Zurich is liable for the amount of the settlement. 998 F.2d at 679 (citations omitted). The Ninth Circuit stated that Zurich was liable only for the amount of a "reasonable settlement of the claim in good faith." Id. The Ninth Circuit explained that a reasonable settlement made by the insured to terminate an underlying claim is presumptive proof of the insured's liability on the underlying claim, and presumptive proof of the amount of such liability. The Ninth Circuit stated, however, that this presumption may be overcome by proof that the settlement agreement is unreasonable or uninsurable. Id. The Ninth Circuit held that the settlement agreement reached by Killer Music represented, in part, an exchange of cash in consideration for the copyrights to the songs in dispute, not simply compensation for damages from copyright infringement. The Court held that Zurich was not responsible for the reimbursment of that part of the settlement agreement which represented the value of the songs Killer received. 998 F.2d at 679-80. The Ninth Circuit instructed the district court on remand to allow Zurich the opportunity to demonstrate which portion of the settlement amount is allocable to the value of the songs which Killer received in the settlement agreement. This court finds that Zurich is wholly applicable to the case at bar opinion and entirely consistent with Westamerica, and Gypsum which both stand for the proposition that the settlement agreement of an insured must be reasonable in light of potential liability and must include insurable claims.

To substainate its conclusion that the 1999 settlement agreement between PTI and PSC is actually a business transaction, Federal cites to the expert report of a Gordon V. Smith. Mr. Smith represents himself, in his expert report, as being an officer of AUS Consultants, Inc., a corporation

12

that provides expert economic analysis and intellectual property valuations. Mr. Smith states in his expert report that the 1999 settlement agreement between PTI and PSC represents a deliberate transaction in which PTI acquired the trademark rights of the "Platinum" mark for $10 million. Mr. Smith states that the $4,000,000 up front and the $6,000,000 credit represents the face value of the "Platinum" trademark received by PTI and not the potential damages that PTI faced for trademark infringement.

In response, PTI admits that the 1999 settlement agreement with PSC included the assignment of the trademarks rights that formed the basis of PSC's claims. PTI, however, asserts three arguments as to why Federal should nonetheless be liable for the entire amount of the 1999 settlement agreement. First, PTI argues that Federal is estopped from asserting this argument under Illinois law and cites Employers Ins. v. Ehlco Liquidating Trust, 186 Ill. 2d. 127, 150-54 (1999), United States Gypsum Co. v. Admiral Ins. Co., 268 Ill. App. 3d 598, 637 (1st Dist. 1994), and Chandler v. Doherty, 299 Ill. App. 3d 797, 805-06 (4th Dist. 1998) in support. This argument is logically inconsistent with PTI's argument made in its own motion for partial summary judgment and is completely without merit.

As discussed in section II.A, in cases where there has been a breach by the insurer of its duty to defend and the insured has reached a settlement agreement, there is a concern that the settlement was entered into in order to obtain insurance coverage for an otherwise uninsurable claim. Gypsum, 268 Ill. App. 3d 598, 637, 643 N.E.2d 1226, 1243. Therefore, it follows that an insurer who has breached its duty to defend may attack a settlement agreement by demonstrating that a settlement agreement is unreasonable or that the settlement agreement contains otherwise uninsurable items. See supra, Gypsum, Westamerica. This court holds as a matter of law that the Illinois estoppel rule

for insurers who breach their duty to defend does not estop an insurer who breached its duties from claiming that a settlement agreement contains uninsurable elements and is therefore not the responsibility of the insurer.

Second, PTI argues several aspects of the 1999 settlement agreement. Again, PTI does not dispute the fact it received the rights to the trademark "Platinum" as a result of the 1999 settlement agreement. Instead PTI argues: 1) that the 1999 settlement agreement also includes a "license back" agreement to PSC, which in the end gives nothing to PTI of "independent economic value," since PTI had no intent nor ability to use the mark it received, 2) that trademarks are not "tangible property," and 3) that trademark assignments are customary in trademark infringement cases. All of these arguments are without merit because none of these arguments address whether the 1999 settlement agreement with PSC is a settlement of legal liability or an uninsurable business transaction.

First, the "license-back" portion of the 1999 settlement agreement in no way impacts on whether PTI actually received rights and privileges in the mark "Platinum" in consideration of ten million dollars. PTI admits that it received rights to the "Platinum" trademark from PSC. As a result, whomever in future, eventually ends up with those rights is of no consequence to this discussion. As to PTI's second argument that it did not receive "tangible property" when it was assignment the rights to the "Platinum" mark, this argument is without merit because whether the rights assigned to PTI by PSC are tangible or intangible is of no difference on whether the 1999 settlement agreement is insurable by Federal. To be clear, on Federal's motion for summary judgment the issue is whether PTI settled a lawsuit by paying damages pursuant to a settlement agreement or did PTI enter into a purchase contract for a trademark which had as a condition

14

subsequent the dismissal of a pending lawsuit. Addressing PTI's third argument that trademark assignments are commonplace in settlement agreements involving trademark infringement lawsuits, the fact that trademark assignments are often made pursuant to a settlement agreement dealing with trademark infringement does not bear on the pertinent issue of whether the settlement price agreed to by PTI represents the purchase price for the "Platinum" trademark, rather than damages for copyright infringement.

PTI's final argument is that Federal's expert report is inadmissible. PTI argues that Mr. Smith's expert report, where he gives his opinion as to the face value of the "Platinum" trademark, usurps the role of the fact finder because his opinion is nothing more than a personal opinion, an interpretation, of the 1999 settlement agreement. PTI cites Mid-State Fertilizer Co. v. Exchange Nat'l Bank, 877 F.2d 1333, 1340 (7th Cir. 1989) in support of this proposition. Mid-State stands for the proposition that experts' opinions must be based on facts, and reasoning in order to withstand or sustain a motion for summary judgment. 877 F.2d at 1339. In Mid-State, the Seventh Circuit found that the expert's opinion in question contained "nothing but conclusions--no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected." Id. The Seventh Circuit held that affidavits supporting and opposing motions for summary judgment shall set forth facts and a process of reasoning beginning from a firm foundation. Id. The Seventh Circuit held that this standard for summary judgment applied to reports submitted by experts even though Rule 705 of the Federal Rules of Evidence allows an experts to present naked opinions at trial. Id. Applying Mid-State to this case, this court must determine whether the opinion of Mr. Smith is admissible in general and then determine whether his opinion is based on facts and a process of reasoning from a firm foundation such that it supports Federal's motion for summary judgment.

Rule 702 of the Federal Rules of Evidence states that if scientific, technical, or other specialized knowledge will assist the trier of fact then a witness qualified by knowledge, skill, experience, training or education may testify thereto. This rule is phrased broadly and it extends to all specialized knowledge including the specialized knowledge of evaluating the value of trademarks. PTI does not dispute nor argue that the valuation of trademarks is not a specialize field of knowledge. In addition, PTI does not dispute that Mr. Smith is an expert in the field of valuation of trademarks. Therefore, expert testimony concerning the valuation of trademarks would be admissible at trial and Mr. Smith would be allowed to testify. However, as <u>Mid-State</u> holds the admissibility of an expert's opinion at trial does not mean that an expert's opinion can withstand or support a motion for summary judgment.

In this case, Mr. Smith's opinion does not include a sufficient foundation of factual reasoning to support his claim that the settlement price of ten million dollars represents the face value of the "Platinum" mark. Accordingly, Mr. Smith's expert opinion is insufficient to support Federal's motion for summary judgment where reasonable inferences must be made in favor of PTI. Despite the fact that PTI does not present a viable argument to dispute Federal's claim that PTI's settlement agreement with PSC was a purchase of a trademark, and despite the fact that PTI does not present any evidence to dispute Federal's claim that ten million dollars represents the face value of the trademark received by PTI, and despite the fact that PTI has not adduced evidence to establish that the settlement price between PTI and PSC represents potential damages faced PTI as a result of trademark infringement, the expert report of Mr. Smith fails to substantiate Federal's claims concerning the face value of the "Platinum" mark. As a result, Federal fails to carry its evidentiary burden on its motion for summary judgment as to this issue. Accordingly, Federal's motion for

summary judgment on this issue must be denied.

B.  <u>Federal's Liability as to the $6 million credit</u>

In the alternative to summary judgment in favor of Federal because the entire 1999 settlement agreement between PTI and PSC constitutes a sell and purchase of a trademark, Federal asks for summary judgment in its favor as to $6,000,000 of the total $10,000,000 claimed by PTI. Federal argues that this aspect of the 1999 settlement agreement is speculative and conjecture, cannot be considered damages and is not the responsibility of Federal. Federal argues that because PTI has not as of yet had to pay any amount toward the $6 million credit and that PTI continues to negotiate that part of the settlement agreement with PSC then Federal is not liable to indemnify PTI that amount. In support Federal cites <u>Kohlmeier v. Shelter Insurance Company</u>, 170 Ill. App. 3d 643, 525 N.E.2d 94, 121 (5th Dist. 1988) and <u>Harp v. Illinois Central Golf Railroad Company</u>, 55 Ill. App.[sic] 822, 370 N.E.2d 826 (5th Dist. 1977).

In response PTI argues that Federal is obliged to reimburse PTI on the incurrence of liability as opposed to the payment of liability. PTI asserts that Federal must pay the value of PTI's liability including the $6 million product credit, regardless of whether the credit has been paid. PTI contends that PSC now doing business as Epicor Software Corporation ("Epicor") can and will use the credit, but admits that Epicor has not used the credit as of yet. In addition, PTI admits that Epicor has attempted to renegotiate the $6 million credit on separate occasions for $3 million cash, and for $2.5 million cash. PTI cites <u>UNR Industr., Inc. v. Continental Cas. Co.</u>, 942 F.2d 1101, 1004-05 (7th Cir. 1991) in support.

It is true that future damages cannot be compensated. <u>See Harp</u>, 55 Ill. App. 3d at 827, 370 N.E.2d at 829. In addition, it is well established that the purpose of damages is to place the

17

nonbreaching party in the position they would have been in had the contract been performed, but not to place them in a better position or provide them with a windfall recovery. See Kohlmeier, 170 Ill. App. 3d at 654, 525 N.E.2d at 102. However, it is also established that an indemnity insurer must pay the value of settle claims at judgment or settlement even though the insured has not yet paid those claims. See UNR, 942 F.2d at 1004-05. Accordingly, the only argument available to Federal is whether the $6 million credit is a reasonable valuation of PSC's claim of trademark infringement. As a result, Federal's argument concerning the $6 million credit goes to the reasonableness of the 1999 settlement between PTI and PSC. As held in section II.C of this opinion, there exists a genuine issue of material fact as to the reasonableness of the 1999 settlement between PTI and PSC and therefore summary judgment in favor of Federal on this issue must be denied.

C.    Federal's behavior under Section 155 of the Illinois Insurance Code

Federal asks for summary judgment on the issue of whether Federal has acted vexatious or unreasonable in conducting this litigation so to award damages to PTI under §155 of the Illinois Insurance Code. In determining whether an insurer is guilty of vexatious conduct, this court must consider the totality of the circumstances. Buais vs. Safeway Insurance Company, 275 Ill. App. 3d 587, 656 N.E.2d 61 (1st Dist. 1995). Wrongful denial of coverage is not enough by itself to warrant statutory penalties; the denial of coverage must be unreasonable and vexatious. Matsushita Electric Corporation of America v. Home Indemnity Company, 907 F.Supp. 1193, 1200 (N.D. Ill. 1995). An honest dispute as to the legal obligations of the parties does not qualify bad faith. See Bernstein v. Genesis Inc. Co., 90 F. Supp. 2d 932, 940 (N.D. Ill. 1999)(citing Johnson v. Safeco Ins. Co. of Am., 809 F. Supp. 602, 608 (N.D. Ill. 1992), Cummings Foods, Inc. v. Great Cent. Ins. Co., 108 Ill. App. 3d 250, 439 N.E.2d 37, 42 (1982)).

18

This court held on June 27, 2000, that PTI had not as of that time presented any evidence to suggest that Federal did anything more than have an honest dispute as to whether it had a legal duty to defend PTI in its lawsuit with PSC. Upon further review of the record, there still exists no evidence which affirmatively demonstrates that Federal has acted vexatiously or unreasonably concerning this lawsuit. PTI has the burden to produce evidence to demonstrate that Federal has acted in a way that damages are necessary under §155. In this case, PTI simply restates that facts of this case and concludes on its own that Federal's actions are unreasonable. PTI only argues that Federal wrongfully denied coverage, this is insufficient to establish vexatious or unreasonable behavior.

In support of its motion for summary judgment, Federal argues that it acted reasonably, upon the advice of competent counsel, in pursuing this litigation and cites to the depositions of Federal's regional manager responsible for pursuing this matter, and to their retained attorney in support. Taking all the inferences in favor of PTI, PTI fails to present any evidence of bad faith, vexatious behavior, or unreasonableness on the part of Federal concerning this litigation and summary judgment on this issue in favor of Federal is necessary as a matter of law.

## CONCLUSION

There remains only one question for trial: whether the 1999 settlement agreement between PTI and PSC is reasonable in light of the potential damages faced by PTI for trademark infringement. In determining that question, issues surrounding the 1999 settlement agreement, of whether PTI incurred any actual damages reimbursable under its insurance contract with Federal, and whether the $6 million is an actual liability incurred by PTI will be properly addressed.

PTI's motion for partial summary judgment is GRANTED as to whether it faced a reasonable anticipation of liability, and DENIED on the issue of whether their 1999 settlement agreement with PSC was reasonable. Federal's motion to strike is DENIED in its entirety. Federal's motion for summary judgment is GRANTED on the issue of whether it acted vexatiously or unreasonable under §155 of the Illinois Insurance Code and DENIED on the issue of whether PTI suffered no damages from the 1999 settlement agreement with PSC and DENIED on the issue of whether the $6 million credit as part of the 1999 settlement agreement is speculative and conjecture.

This court strongly encourages both sides to settle this case. All previous dates remain.

ENTER:

*James F. Holderman*

JAMES F. HOLDERMAN
United States District Judge

DATE: February 1, 2001

20